UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| CHARLES ALAN OWEN, )<br>)<br>    Plaintiff )<br>)<br>v. )<br>)<br>SPORTS GYMNASTICS FEDERATION )<br>OF RUSSIA, )<br>)<br>    Defendant ) | 1:12-cv-00034-NT |

**RECOMMENDED DECISION**

Charles Owen has filed a Motion to Vacate Voluntary Dismissal (ECF No. 43) and Motion for Entry of Default (ECF No. 46). Owen is engaged in a quixotic battle with the Sports Gymnastics Federation of Russia over the use of the label "official website" in conjunction with certain internet websites maintained on behalf of specific female Russian gymnasts. Owen maintains he was duped by the Russians to voluntarily dismiss his lawsuit last spring and now he wants to reinstitute his case. Pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure, Owen's voluntary dismissal was with prejudice[1] (see ECF No. 40) and thus acted as an adjudication on the merits. Owen now wants to simply reopen his lawsuit and then move for the entry of default because the defendant has never responded. I now recommend that the Court deny the motion to vacate voluntary dismissal and dismiss the motion for entry of default.

---

[1] It probably is not significant that the voluntary dismissal was with prejudice because even if Owen intended the dismissal to be without prejudice, his pleadings reflect that he may have previously dismissed a state court action based on the same claim. (See Amended Complaint ¶ 14, ECF No. 11.) That being so, the second voluntary dismissal in this court would have acted as an adjudication on the merits no matter what plaintiff intended. Fed. R. Civ. P. 41(a)(1)(B).

## BACKGROUND

Claiming that the Sports Gymnastics Federation of Russia consented to the jurisdiction of the courts of the United States when it registered its internet domain name, russiangymnasts.net, through a Houston, Texas, company, Charles Owen has brought suit against the Association in this court, alleging common law fraud, violation of the Lanham Act, and also alleging violations of the Russian Civil Code and perhaps the Russian constitution. Owen seeks declaratory and injunctive relief relating to the defendant's use of websites as the "official" website of certain Russian gymnasts, as well as monetary damages. Owen filed a motion in this court seeking authorization to make alternative service by serving the defendant through its e-mail address and by faxing a copy of the complaint to its headquarters in Russia. I denied the plaintiff's request to make service in that fashion. (ECF No. 6.)

I subsequently granted a motion to make alternative service by means of personal service via a Russian attorney and by providing copies of all documents in both Russian and English to defendant via email and fax. (ECF No. 15.) I ordered that service would not be complete until the Russian process server provided this court with a fully executed and properly notarized return of service as explained in the information provided by the plaintiff from the United States Department of State. A proof of service, signed under penalty of perjury, was provided to the court. (ECF No. 30.) Thereafter, I scheduled and held a lengthy hearing on the various motions filed by plaintiff. (ECF No. 39.) Before I could issue an opinion on the pending motions, plaintiff filed a notice of voluntary dismissal, indicating in his pleading that dismissal was to be with prejudice. (ECF No. 40.)

**LEGAL STANDARD**

Owen relies upon a trio of decisions out of the Ninth Circuit for the proposition that "Rule 60(b) relief may sometimes be appropriate in cases of voluntary dismissal." Int'l Allied Printing Trades Ass'n v. Am. Lithographers, Inc., 233 F.R.D. 554, 555 n.3 (N.D. Cal. 2006); see also Budanio v. Saipan Marine Tours, Inc., 22 Fed. Appx. 708, 710 (9th Cir. 2001); Noland v. Flohr Metal Fabricators, 104 F.R.D. 83, 85 (D. Alaska 1984) (reasoning that despite the lack of court intervention, a voluntary dismissal under Rule 41(a)(1) can be considered a "proceeding" for purposes of Rule 60(b)).  The Ninth Circuit is not alone in treating a motion to set aside a voluntary dismissal as an appropriate motion to consider under Rule 60(b) of the Federal Rules of Civil Procedure.  See Schmier v. McDonald's LLC, 569 F.3d 1240, 1242 (10th Cir. 2009); Warfield v. AlliedSignal TBS Holdings, Inc., 267 F.3d 538, 542 (6th Cir. 2001); Randall v. Merrill Lynch, 820 F.2d 1317, 1320 (D.C. Cir. 1987).  In each of these cases the voluntary dismissal acted as an adjudication on the merits, that is to say that the plaintiff either filed a notice of dismissal with prejudice or the notice of voluntary dismissal was a second notice.  In those circumstances the Court determined that even though there had been no court order or judgment causing the dismissal, the Court could still employ Rule 60(b) to grant relief from judgment in the appropriate case.

The fact that there is authority to support the proposition that Rule 60(b) relief may be available when a plaintiff mistakenly files a voluntary dismissal with prejudice does not mean that Owen has met the exacting standard for obtaining that relief.  Owen specifically invokes Rule 60(b)(6) as the basis for his motion, claiming that the misrepresentations of a third party, the mother of one of the female Russian gymnasts, caused him to file his notice of dismissal. The First Circuit has long taken a dim view of "mistake" as a means to obtain Rule 60(b) relief.

See Silk v. Sandoval, 435 F.2d 1266, 1267-68 (1st Cir. 1971) (rejecting garden-variety judicial error as a mistake warranting relief under Rule 60(b)(1), cited with approval in Venegas-Hernandez v. Sonolux Records, 370 F.3d 183, 189 (1st Cir. 2004)). Whether Owen is invoking Rule 60(b)(3) or Rule 60(b)(6), his allegations should state an "unconscionable scheme" or "the most egregious conduct" by either the opposing party or a third party to this litigation before the Court would grant Rule 60(b) relief. Roger Edwards, LLC v. Fiddes & Sons Ltd., 427 F.3d 129, 133 (1st Cir. 2005).

## DISCUSSION

*The factual allegations regarding mistake/fraud*

Owen has filed his own affidavit signed under penalty of perjury recounting the events surrounding his voluntary dismissal of his amended complaint on May 8, 2012. On May 7, 2012, Owen received an on-line chat message from Galina Grishina, the mother of one of the Russian gymnasts. She informed Owen that the athletes' chief sponsor was the Russian Federation and that if Owen wanted to regain the team's trust and have open communications with the athletes he should dismiss his lawsuit. Because Owen wanted to keep the channels of communication between himself and the team members open, he dismissed the case after receiving Grishina's assurances that the controversy could be resolved outside of litigation.

Owen received information from Grishina about how to get to the national training facility of the gymnasts. He agreed to not arrive in Russia until after the Olympics[2] because Grishina told him that everyone was focused on preparing for the Olympics and no one at the training facility would be willing to see him. During this same time period, on May 7, 2012, he

---

[2] The 2012 Summer Olympics commenced in London, England on Friday, July 27, 2012, and concluded on Sunday August 12, 2012. Although Owen does not elaborate about which "Olympics," from the allegations in his amended complaint it is apparent that he is referencing the 2012 Summer Olympics.

received a message from another parent urging Owen not to force his daughter to testify because he believed she would not be able to cope with it.

Owen continued to maintain his websites for the gymnasts. Based on his computer logs during the broadcast of the gymnastics competition the number of views on the websites would top 20,000. Prior to the Olympics one gymnast's website received about 1,000 visitors per day and another received about 500-800 visits. During the gymnastics broadcast the high volume of visitors cause the web server to crash and temporarily go offline.

After the Olympics, Owen began planning a trip to *Ozeroe Krugloe* (Round Lake), the national training facility for the gymnasts. He announced the dates for his trip online and solicited fan mail for the athletes. He received approximately 70 letters to deliver to the gymnasts in Russia. He arrived in Moscow on October 1, 2012.

Approximately five weeks before his planned departure for Russia, Grishina stopped communicating with him. Also, immediately following the Olympics two gymnasts with whom Owen had maintained friendships blocked him online so he was no longer able to communicate with them. However, Owen sent messages to everyone announcing his visa approval and flight information. Owen suspects that pressure was placed on the athletes and their parents not to have contact with him. Owen knows that his messages, sent on Facebook, were read by certain of the individuals, but he received no responses.

Nevertheless, Owen proceeded to Moscow and attempted to gain entry to the training facility. He communicated with the facility's front office by sending multiple emails and faxes, but he received no response. He never made personal contact with any of the athletes or their families. Owen believes that the contact was terminated because of pressure put on the athletes and their families by the federation.

*The substance of the underlying amended complaint*

Charles Owen filed the original complaint against the Sports Gymnastics Federation of Russia on January 30, 2012, describing a dispute between himself and the Federation over the use of the word "official" in conjunction with their competing websites devoted to female Russian gymnasts. Owen's "hook" by which he claims this Court has personal jurisdiction over the Russian NGO, which sponsors and trains Olympic-caliber female gymnasts throughout the Russian Federation, is based upon the Federation's alleged consent to the jurisdiction of the United States federal courts regarding all disputes related to the domain name, www.russiangymnasts.net, when the Federation registered that name through a company located in Houston, Texas. Following initial forays in this Court regarding the requirements for service, Owen did make service in Moscow and it appears without doubt that the defendant has actual notice of this lawsuit. It has not responded to the complaint.

Owen explains his lawsuit and request for preliminary injunctive relief in the following terms: "This lawsuit is for Fraud, Violation of the Lanham Act[3], and for Declaratory Relief." (Mot. for Prelim. Inj. at 1-2, ECF No. 26.) Owen ultimately intends to ask this Court for a default judgment that would amount to a declaratory judgment that between himself and the Sports Gymnastics group, his websites alone are entitled to use the word "official" with respect to certain of the female gymnasts. Owen claims to have the permission of the athletes and their parents to maintain "official" websites for the gymnasts. Owen requests that nonparty

---

[3] Owen's amended complaint consisted of eight counts. Counts I and II alleged violations of Russian substantive law, including the Russian Civil Code, including Article 179 an allegation of fraud. Counts III – VII request declaratory relief, claiming that individual athletes want his website to be the official site. Count VIII alleges a violation of the Lanham. Not surprisingly, following my comments at oral argument regarding this Court's competence to interpret and apply Russian substantive law and the athletes' apparent change of heart regarding maintaining contact with Owen and his websites, Owen now requests that he be relieved from judgment only as to Count VIII, the Lanham Act count. (See Motion to Vacate Voluntary Dismissal, ECF No. 43, at p. 7 ("the Lanham Act count will sufficiently provide the relief sought in the complaint," but reserving an alleged right to vacate other counts if things don't go his way)). It is for that reason that I have included a brief preliminary analysis of the merits of the so-called Lanham Act count.

LaunchPad.com, the Houston, Texas based registrar for the domain name, be ordered not to transfer, suspend, or otherwise modify the domain name russiangymnasts.net during the pendency of this litigation and that LaunchPad be ordered to deposit with the court documents sufficient to establish the court's control and authority regarding the disposition of the registration and use of the domain name to the court. (Id. at 6.) Apparently sometime after Owen commenced this lawsuit the defendant may have switched the domain name to a registry in another country rather than the United States.

Owen bases his lawsuit in large measure upon Quabang Rubber Company v. Fabiano Shoe Co., Inc., 567 F.2d 154, 160 (1st Cir. 1977), which recognized that any person who is likely to be damaged by a false designation and description has standing to bring an action under 15 U.S.C. § 1125(a), even if he is not the owner of a federally registered trademark. The case explained that the basis for an action under the Lanham Act is the use of a mark in interstate commerce that is likely to cause confusion or deceive purchasers concerning the source of the goods. Id. The case begs the question of whether the use of the term "official" in relationship to websites containing information about female gymnasts concerns "the source of the goods." Owen disavows any commercial use of his website and acknowledges that he has no right to claim the athletes' names as his "mark."

Thus, Owen's case is unlike those Lanham Act cases wherein a celebrity is able to use the statute to vindicate property rights in their identities against allegedly misleading commercial use by others. E.g., Parks v. LaFace Records, 329 F.3d 437, 445 (6th Cir. 2003) (collecting cases). Owen maintains his websites for the athletes and their fans and apparently prides himself on being the "go-to" website for obtaining up-to-date and authorized information about the athletes, but he acknowledges he has no "right" to the individual athlete's name. In order to have

standing to sue under the Lanham Act, Owen must not only provide a service for the athletes, but he must also have his own commercial interest to protect. Stayart v. Yahoo! Inc., 623 F.3d 436, 439 (7th Cir. 2010) (explaining the difference between § 43 pertaining to commercial plaintiffs and § 32 of the Lanham Act pertaining to noncommercial advocacy activities if the plaintiff is the holder of a registered trademark). Therefore, even though the defendant has defaulted in this case, Owen's likelihood of ultimately obtaining an enforceable judgment under his Lanham Act claim is not great.

Even if Owen does have some sort of claim under the Lanham Act, his preliminary injunction is directed entirely at LaunchPad, a nonparty who has received no notice of this action and who would have no reason to be bound by an order issued by this Court. Furthermore, according to Owen's own allegations, LaunchPad has already transferred the domain name to another individual. At oral argument Owen explained that his goal was to prevent the Sports Gymnasts Foundation from removing itself from this court's personal jurisdiction by transferring the domain name to someone who would ultimately register it with a different registrar outside of the United States. Owen maintains that personal jurisdiction was established by the contract the foundation signed with the Texas company when it registered the domain name. I fully understand Owen's allegation, but I have been unable to locate a copy of that contract in the voluminous and unidentified filings that have been placed on the docket. It is not an attached exhibit with the original complaint or the amended complaint. The jurisdictional morass is quite murky indeed.

### *Resolution of the pending motions*

Considering these current pleadings and the historical context of this litigation, this Court must determine whether Owen has made the necessary showing to entitle him to Rule 60(b)

relief.  I conclude that he has not made a sufficient showing.  Grishina was not a party to the litigation, but in May she told Owen it was her opinion that if he wanted to maintain any semblance of a relationship with the athletes and their parents, he needed to end this litigation.  At the same time Owen received a communication from another parent concerning the stress the litigation place on the Olympic gymnast.  Obviously, if Owen's lawsuit has any merit at all it would depend upon these athletes' testimony regarding their desire to have his website as the "official" website.  That Owen read the writing on the wall and decided to dismiss his case with prejudice was not the product of fraud or some egregious plot.  It was a reasonable decision given the facts that were known to Owen at the time.

Unfortunately, subsequent events have unfolded resulting in Owen having lost all contact with the Russian gymnasts and their families.  He suspects the defendant in this action may have had something to do with that decision on the part of the gymnasts.  Assuming that the defendant did discourage contact with Owen, that is not the type of conduct that would prevent this litigation from being finally resolved.  Owen has not shown that anyone, either the defendant or Grishina, perpetrated any fraud upon him or this court and Owen's decision to voluntarily dismiss this case with prejudice should not be overturned.

## CONCLUSION

Based on the foregoing, I recommend that the motion to vacate be treated as a Rule 60(b) motion for relief from judgment and that it be denied and that the motion for entry of default be dismissed as moot.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

January 16, 2013 /s/ Margaret J. Kravchuk
U.S. Magistrate Judge